UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

ANDANTE LAMONT GOLDSBY,

             Plaintiff,

vs.

AMANDA KASCHMITTER, STEVEN "JASON" RAMBO, JOAN MCPHEETERS, AND DOES 1-X,

             Defendants.

Case No.1:14-cv-00032-REB

**MEMORANDUM DECISION AND ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (DKT. 24)**

      Plaintiff Andante Lamont Goldsby ("Goldsby") is a prisoner in the custody of the Idaho Department of Corrections ("IDOC"). He brings claims for violations of the First and Fourteenth Amendments against various IDOC employees arising from his participation in the retained jurisdiction or "Rider" program at North Idaho Correctional Institution ("NICI"). All parties have consented the exercise of jurisdiction by a United States Magistrate Judge. Defendants have filed a Motion for Summary Judgment alleging that all claims against them should be dismissed due to Goldsby's failure to exhaust intra-prison administrative remedies. The Court has reviewed the briefing and the affidavits of the parties and concludes that the decisional process would not be significantly aided by oral argument, Idaho Local Rule 7.1(d)(1)(B), and accordingly, now issues the following

**MEMORANDUM DECISION AND ORDER - 1**

Order.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Goldsby is a forty-nine year old African American man who, until several years ago, was a resident of Spokane, Washington. In 2012 he was arrested for driving under the influence while driving in Coeur d'Alene, Idaho. He was initially charged with misdemeanor DUI, but the charges were later amended to felony DUI. His case came before Idaho District Judge Fred Gibler, who sentenced him to a prison term of between three and six years. Judge Gibler also elected to place Goldsby in Idaho's retained jurisdiction program, more commonly known "the Rider Program." The Rider Program is "a sentencing option where the judge imposes a sentence of incarceration, but retains jurisdiction for a period of time. If the defendant is successful on programming while in custody, the judge reconsiders whether to place the defendant on probation instead of continuing his prison sentence." *Veenstra v. Blades,* 2015 WL 8215701 at n. 2 (D. Idaho 2015); *See also,* Idaho Code § 19-2601. Inmates in the Rider Program are often those who suffer from addiction to drugs or alcohol, and thus might benefit from a combination of treatment programs and probation, as opposed to incarceration.

Goldsby began his participation in the Rider Program at NICI in December of 2012. Soon after his arrival, he was placed in an intense drug and alcohol treatment program known as the "Therapeutic Community" or "TC Program."  (Amended

**MEMORANDUM DECISION AND ORDER -  2**

Complaint, Dkt. 12, ¶ 16). Goldsby asserts that he was the only black man in a group of sixty-six TC participants. As soon as he entered this program, he began to have concerns that his instructor, Defendant Amanda Kaschmitter, was biased against him because of his race. (*Id.* ¶ 18). Goldsby raised these concerns with another NICI staff member, Officer Plank, in January of 2013. Officer Plank told Golsby to write a concern form directed to program supervisor Steve Rambo. (*Id.* ¶¶ 20-21). Goldsby did so, and was told by Mr. Rambo that if he felt racial bias was an issue, he needed to follow the grievance process, which meant submitting a concern form directed to Kaschmitter herself. (*Id.* ¶ 22).

Over the next few months, Goldsby alleges that he was subjected to a number of racial slurs from Kaschmitter and other inmates at NICI. He alleges, for example, that on February 1, 2013 Kaschmitter said to him, "I thought you and your kind of people were supposed to jump and move fast," when he was walking slowly in her vicinity. (*Id.* ¶ 23). He also alleges that on March 27, 2013, Kaschmitter allowed another inmate in a TC group meeting to make racially derogatory statement to the effect that no one wanted a "a nappy looking guy representing them." (*Id.* ¶ 25-26). On April 27, 2013, Kaschmitter allegedly refused to accept Goldsby's "Relapse Prevention Book" because he gave "cookie cutter answers," and told him not to resubmit it until July of 2013. (Amended Complaint ¶ 29). Approximately two weeks later, on May 9, 2013, Goldsby filled out another concern form alleging that racial discrimination by NICI staff was inhibiting his

**MEMORANDUM DECISION AND ORDER - 3**

ability to progress in the TC program. He submitted additional concern forms reiterating these concerns on May 21, 2013, and again on May 23, May 29, and May 30th, 2013. (Dkt. 31-1 p. 9, 11, 13, & 17). The tenor of each of these concern forms was that NICI staff members, primarily Kaschmitter, were racially biased against him, and that this bias, and Kaschmitter's retaliation against him for raising the bias issue, was effectively preventing his ability to progress in the Rider program.

In a recommendation dated June 21, 2013, Defendant Joanne McPheeters, another NICI staff member, prepared an addendum to the pre-sentence report recommending that Judge Gibler relinquish jurisdiction over Goldsby and sentence him to a term of incarceration rather than allow him to be placed on probation. Though the parties have not submitted this addendum to the Court, according to Plaintiff's briefing the addendum opined that Goldsby was manipulative and cited his accusations of racial bias against Defendant Kaschmitter and other NICI staff as part of the basis for this assertion. (Response Brief, Dkt. 29 at p. 8). On July 11, 2013, Judge Gibler held a hearing to assist in deciding whether to allow Goldsby to be placed on probation or require him to serve the remainder of his sentence in prison. Though the transcript of that hearing has not been provided to the Court, Goldsby's briefing asserts that Defendant Kaschmitter testified at this hearing. Goldsby also asserts that in her testimony, Kaschmitter denied making racially charged comments and also denied authorizing others to make such comments. (*Id.* at p. 8-9). Ultimately, Judge Gibler decided to relinquish jurisdiction, and sentenced Goldsby to a prison term of one year and six months fixed and four years and six months

**MEMORANDUM DECISION AND ORDER - 4**

indeterminate. (*Id.* ¶ 49).

Goldsby, acting pro se, filed this lawsuit on January 27, 2104. (Dkt. 3). He subsequently obtained counsel, who filed a Verified Amended Complaint alleging violations of the First and Fourteenth Amendments. (Dkt. 12). Defendants filed their Motion for Summary Judgment on June 2, 2015, alleging that Goldsby's claims are barred because he failed to exhaust his administrative remedies.

In response to this motion, Goldsby argued, among other things, that he was not required to complete the administrative grievance process for the claims at issue, because "racial discrimination and retaliation by IDOC staff resulted in the district court relinquishing jurisdiction over Goldsby and imposing his sentence," and that sentencing issues, per IDOC rules, are not issues that have to be grieved. (Response Brief, Dkt. 29, at p. 14). In reply to this argument, Defendants contend that if, as Goldsby claimed in his response, his damages related to his "loss of freedom" are the result of the adverse sentencing decision, then the case would be barred by the doctrine articulated by the Supreme Court in *Heck v. Humphrey,* which prevents a plaintiff from pursuing a section 1983 claim in federal court if a favorable verdict would necessarily imply the invalidity of a state court conviction or sentence, unless the conviction or sentence has already been expunged, overturned, or otherwise invalidated. *Heck v. Humphrey,* 512 U.S. 477, 486-87 (1994). Because Defendants did not raise the *Heck v. Humphrey* issue until their reply

**MEMORANDUM DECISION AND ORDER - 5**

brief, the Court granted the Plaintiff an opportunity to respond to the issue in a sur-reply, pursuant to Rule 56(f) of the Federal Rules of Civil Procedure. (Dkt. 36).

## LEGAL STANDARDS

### 1.    Summary Judgment

Summary judgment is appropriate where a party can show that, as to a particular claim or defense, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). One of the principal purposes of the summary judgment rule "is to isolate and dispose of factually unsupported claims or defenses." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). It is not "a disfavored procedural shortcut," but is instead the "principal tool[ ] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Id. at 327*.

"[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment ...." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48 (1986). Rather, there must be no genuine dispute as to any material fact in order for a case to survive summary judgment. Material facts are those "that might affect the outcome of the suit." *Id*. at 248. Disputes over facts that are not material to the resolution of the motion will not preclude summary judgment. *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The moving party is entitled to summary judgment if that party shows that each material fact cannot be disputed. To show that the material facts are not in dispute, a party

**MEMORANDUM DECISION AND ORDER - 6**

may cite to particular parts of materials in the record, or show that the adverse party is unable to produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(A) & (B). The Court must consider "the cited materials," but it may also consider "other materials in the record." Fed. R. Civ. P. 56(c)(3).

If the moving party meets its initial responsibility, then the burden shifts to the opposing party to establish that a genuine dispute as to any material fact actually does exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). The existence of a scintilla of evidence in support of the non-moving party's position is insufficient. Rather, "there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson,* 477 U.S. at 252.

## DISCUSSION

The Prison Litigation Reform Act of 1995 ("PLRA") requires that prisoners exhaust all available administrative remedies within the prison system before they can include the claims in a new or ongoing civil rights lawsuit challenging the conditions of their confinement. 42 U.S.C. § 1997e(a). "Proper" exhaustion of administrative remedies is required, meaning that the prisoner must comply "with [the prison's] deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). The exhaustion requirement ensures that prison officials have "an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court." *Jones v. Bock*, 549 U.S. 199, 204 (2007). If the defendant

**MEMORANDUM DECISION AND ORDER - 7**

initially shows that (1) an available administrative remedy existed and (2) the prisoner failed to exhaust that remedy, then the plaintiff can only overcome summary judgment by showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him. *Albino v. Baca*, 747 F.3d 1162, 1169, 1171 (9th Cir. 2014) (en banc). Confusing or contradictory information given to a prisoner, misinformation about grievance procedures, or lack of access to necessary grievance forms are among the kinds of things that courts have held may effectively interfere with inmate's efforts to exhaust. *Albino* at 1172-73.

The IDOC's grievance process consists of three stages. First, any inmate with a concern is required to seek an informal resolution by filling out an Offender Concern Form, addressed to the staff person "most capable of responding to and, if appropriate, resolving the issue." (Pavelec Aff., Dkt. 24-4, at ¶ 5.) If the issue cannot be resolved informally through the use of a Concern Form, the inmate must then file a Grievance Form. (*Id.* at ¶ 6.). A Grievance Form must be submitted within 30 days of the incident giving rise to the grievance. If the inmate is not satisfied with the response to his/her grievance, s/he may file an appeal. (*Id.*). When the Grievance Coordinator receives an appeal, she is required to enter the appeal into the CIS database and forward the appeal to the appellate authority. (*Id.* ¶ 9). Failure to file an appeal "completes the grievance process on the issue grieved." (*Id*. ¶ 7). Not until the completion of all three of these

---

**MEMORANDUM DECISION AND ORDER - 8**

steps—Concern Form, Grievance Form, and grievance appeal—is the grievance process exhausted. (*Id.* at ¶ 10.). The general process for exhausting administrative remedies applies at NICI as well as other prisons within the IDOC system. (Westhoff Aff. Dkt. 24-5 at ¶ 3).

The issues related to Defendants' exhaustion defense are simply stated as follows. While Goldsby filled out multiple concern forms regarding the instances of bias he experienced while at NICI, he never filed a grievance, let alone a grievance appeal, until November of 2013–nearly five months after the allegedly discriminatory conduct had occurred. Administrative exhaustion is a multi-step process, requiring not only a concern forms, but also a grievance and a grievance appeal before a claim can properly be brought in court, and further, any grievance must be submitted within thirty days of the offending conduct. Goldsby did not do so in this case. Therefore, Defendants argue, unless he can show that "there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him," *Albino* 747 F.3d at 1172, his claims are barred.

Goldsby raises two primary defenses to Defendants' exhaustion arguments. First, he argues that because the IDOC has no authority over sentencing issues, including what3 the length of his sentence would be, he was not required to file a grievance at all. Second, he argues that even if he was required to file a grievance, his failure to do so is excusable in this case because he did not have access to his legal paperwork, and was not even given instructions on how to complete the grievance process, after he was transferred from NICI

**MEMORANDUM DECISION AND ORDER - 9**

to Kootenai County Jail in June of 2013.

In arguing that it was not necessary for him to file a grievance in the first place, Goldsby makes the following assertions:

> In this case, racial discrimination and retaliation by IDOC staff resulted in the district court relinquishing jurisdiction over Goldsby and imposing his sentence. The damages are Goldsby's loss of freedom, but the Board of Correction lacks authority over the district court's sentencing decisions. By the defendants own admission, Goldsby does not have to grieve issues like his sentence. . . . IDOC does not have authority to put Goldsby on probation or even get him a hearing before the Idaho Commission of Pardons and Parole. Accordingly the IDOC grievance process is not an available remedy, and Goldsby did not have to exhaust his administrative remedies.

Plaintiff's brief, Dkt. 29, at p. 14. Goldsby is correct that the IDOC has no authority to make sentencing determinations, *Farnsworth v. Craven,* 2007 WL 793397 at * 5 (D. Idaho. 2007) (holding that prisoner seeking a new parole hearing need not follow the standard IDOC procedures for grieving intra-prison complaints). It is equally true that under the IDOC rules, an inmate need not follow the administrative exhaustion process for issues that cannot be grieved. (Pavelec Affidavit, Dkt. 24-4 ¶ 6). Sentencing issues are among the issues that cannot be grieved. (*Id.*). Therefore, to the extent that Goldsby is using this case as a vehicle to challenge the validity of his underlying sentence, rather than as a means of challenging the conditions of his confinement, he is correct that he did not need to file a grievance. However, in seeking to avoid one bar to his claims he runs straight into another – that of the *Heck v. Humphrey* doctrine.

**MEMORANDUM DECISION AND ORDER - 10**

1.    **Heck v. Humphrey**

In *Heck v. Humphrey,* the United States Supreme Court held that a plaintiff is barred from pursuing a section 1983 claim in federal court if a favorable verdict in that case would necessarily imply the invalidity of a state court conviction or sentence, unless that conviction or sentence has already been expunged, overturned, or otherwise invalidated. *Heck,* 512 U.S. 477, 486-87 (9th Cir. 1994). The basis for the Court's decision in *Heck* is that habeas corpus actions, not section 1983 claims, provide the sole vehicle by which an inmate may bring a collateral challenge in federal court to the legality of a state court conviction or sentence. *Id.*

Even though *Heck v. Humphrey* was identified as a possible bar to Plaintiff's claims in the Court's Initial Review Order, (Dkt. 14), the parties have devoted relatively scant attention to that issue in the present summary judgment motion. Because Defendants did not raise the issue until their reply brief, the Court chose to (pursuant to Rule 56(f)) give the Plaintiff an opportunity to submit a sur-reply addressing that issue. (Dkt. 36). However, the sur-reply simply asserted, without elaboration, that because Plaintiff's Fourteenth Amendment Equal Protection Claim asserts that he was removed from the Rider Program on the basis of his race, that it does not imply the invalidity of his conviction or sentence. Goldsby's argument as to why the Equal Protection claim should not be dismissed pursuant to *Heck v. Humphrey* really boils down to the following assertion in his brief: " the lengthening of Mr. Goldsby's sentence is an element of damages proximately caused by his removal from the [rider] program, but is not the basis

**MEMORANDUM DECISION AND ORDER - 11**

of his Equal Protection claim." (Sur-Reply, Dkt. 37 ¶ 2). There is no persuasive sense to the distinction Goldsby is apparently trying to make between the conduct giving rise to the Equal Protection claim and the damages flowing from it, for purposes of the *Heck* analysis. Simply arguing that the damages consist of "removal from the rider program" does not save Goldsby's claims, because in Idaho the Rider Program is inextricably linked to the ultimate sentencing decisions that state court judges make as to whether to send an inmate to prison or place him on probation. Further, *Heck v. Humphrey* bars not just lawsuits that implicate the validity of the underlying *conviction,* but also to suits that would necessarily invalidate the length of a prisoner's confinement. *Nelson v. Campbell,* 541 U.S. 637, 646 (2004). Yet, that is exactly what Goldsby's lawsuit aims to do.

Further, courts make no distinction between the underlying conduct giving rise to a lawsuit and results or damages that flow from that conduct when applying the *Heck v. Humphrey* analysis. In the analogous setting of civil rights cases where a plaintiff alleges that an arrest was impermissibly tainted by racial profiling, courts have routinely held that if a successful claim for racially discriminatory enforcement of the criminal law would implicate a plaintiff's conviction and sentence, the *Heck v. Humphrey* bar is triggered. *See, e.g. Cook v. Layton*, 299 Fed Appx. 173, 174 (3d Cir. 2008); *Sanders v. Fayetteville City Police Dep't.*, 150 Fed. Appx. 542, 543 (8th Cir. 2005); *Gibson v. Superintendent of N.J. Dept of Law,* 411 F.3d 427, 441 (3d. Cir. 2005), (overruled on other grounds *Dique v. New Jersey State Police,* 603 F.3d 181 (3d Cir. 2010); *Cross v. Kings County Sheriff Dept.,* 2014 WL 5107027 (E.D. Cal. 2014); *Cano-Diaz v. City of Leeds, Ala.*, 882

**MEMORANDUM DECISION AND ORDER -** 12

F.Supp.2d 1280 (N.D. Alabama 2012); *Allen v. Laporte,* 2002 WL 1009563 at *1 (E.D. Michigan 2002). In each of these cases, the courts determined that equal protection claims arising from instances of alleged racial profiling (whether true or not) impermissibly implicated a state court's criminal conviction and sentence. In such a setting, unless the conviction has been somehow invalidated, a habeas corpus action is the only avenue to pursue claims for alleged constitutional violations. Goldsby does not assert that his sentence has been expunged, overturned, or otherwise invalidated. Accordingly his Fourteenth Amendment Equal Protection claim is subject to dismissal.

**2.      First Amendment Claim**

Though Goldsby does not make the distinction in his briefing, the First Amendment Claim may require a somewhat different analysis. Though Goldsby's submissions have never made clear precisely how his First Amendment rights were violated, theoretically at least, the damages that might flow from a First Amendment claim would not necessarily implicate his underlying conviction and sentence. Rather, the damages associated with a First Amendment claim–namely any alleged restriction on speech itself–can be seen as existing separately and independently from the underlying criminal conviction and sentence. At least in this respect, it is possible to characterize Goldsby's claims as complaints relating to the conditions of his confinement, rather than as claims that implicate the validity of his sentence under *Heck.*

However, even to the extent that the First Amendment claim can be characterized as a more traditional condition of confinement-type claim, it is still subject to dismissal,

**MEMORANDUM DECISION AND ORDER - 13**

because even if his claims are so characterized, the administrative exhaustion requirements would be fully applicable. Goldsby argues that he was effectively prevented from completing the administrative grievance process after his transfer from NICI on June 22 of 2013, and at least in the abstract, the Court agrees that issues of fact exist as to whether he would have been able to file a grievance during this time frame. However, grievances must be filed within thirty days after the offending conduct takes place and here, the relevant concern forms refer to conduct that occurred on or before May 22, 2013, while Goldsby was still at NICI. More specifically, a careful review of the record reveals that the incidents that form the basis of this lawsuit occurred largely in February, March and April of 2013. (Reply Brief, Dkt. 31 at p. 7-8; McMasters Aff., Dkt. 31-1 at Exhs. A-H). Even reading the record in a light most favorable to Goldsby, the Court cannot identify any discrete incident arising after May 21, 2013, the date on which Defendant Kaschmitter allegedly allowed another inmate to make a reference to "house n*iggers" during a TC group meeting. On that same day, and then again on May 23, 2013, Goldsby submitted concern forms to Kaschmitter asserting that she had authorized racial slurs and also asserting that she had "unfairly frozen" his progress in the TC program. (*Id.* at Exhs. D & E). Even making the perhaps over-generous assumption that the incident alleged here somehow implicated Goldsby's First Amendment rights, as opposed to his Fourteenth Amendment rights, any grievance relating to this conduct needed to be filed no later than June 22, 2013, while Goldsby was still at NICI. Goldsby did not do so, however, and for this reason, the obstacles to completion of the

**MEMORANDUM DECISION AND ORDER - 14**

administrative review process that may have existed after Goldsby was transferred to Kootenai County jail date are simply not relevant.

Finally, the Ninth Circuit's recent decision in *McBride v. Lopez,* 807 F.3d 982, 987 (9th Cir. 2015), holding that fear of retaliation may excuse a failure to exhaust, does not work in Goldsby's favor. In the abstract, someone who believes he has been a victim of racial discrimination might well hesitate to raise that issue with prison officials, particularly in a setting like the Rider Program, where those officials may have some influence over the recommendations that are ultimately made to the sentencing judge. However, under *McBride,* an inmate must show not only that his fear of retaliation was objectively reasonable, but also that he "*actually* believed prison officials would retaliate against him if he filed a grievance." 807 F.3d at 987 (emphasis added). Goldsby's multiple concern forms foreclose any argument that he was actually deterred from pursuing a grievance.

To summarize, Goldsby's primary claim, that he was removed from the Rider Program in violation of his Fourteenth Amendment Equal Protection Rights, is not cognizable here, because it implicitly calls into question the validity of his underlying conviction and sentence, contrary to *Heck v. Humphrey*. To the extent that Goldsby's damages flowing from a First Amendment claim might not trigger the *Heck v. Humprey*

**MEMORANDUM DECISION AND ORDER - 15**

bar on collateral challenges to state court criminal convictions, they are nonetheless subject to dismissal due to his failure to completely exhaust all administrative remedies before filing suit. Pursuant to Ninth Circuit rules, these dismissals operate without prejudice. *See Trimble v. City of Santa Rosa,* 49 F.3d 583 (9th Cir. 1995) (discussing *Heck v. Humphrey* and noting that a prisoner can reassert a claim if he is successful in overturning his conviction); *Wyatt v. Terhune,* 315 F.3d 1108, 1120 (9th Cir. 2003) (overruled on other grounds by *Albino v. Baca,* 747 F.3d 1162 (9th Cir. 2103) (discussing dismissals on the basis of exhaustion). *See also Donley v. Fraker,* 2012 WL 2395879 at * 4 (W.D. Wash. 2012) (holding that dismissal without prejudice is appropriate remedy under PLRA even if further attempts to exhaust would be time-barred).

## ORDER

1. For all the foregoing reasons, Defendant's Motion for Summary Judgment (Dkt. 24) is hereby **GRANTED** and the claims against Defendants hereby **DISMISSED.**



DATED: **April 6, 2016**

Honorable Ronald E. Bush
Chief U. S. Magistrate Judge

**MEMORANDUM DECISION AND ORDER -  16**